MEMORANDUM *
Bonnie Snavely appeals from the district court’s order affirming the bankruptcy court’s order and judgment in adversary proceedings between Ms. Snavely and her brother, debtor-in-possession Douglas Miller. We affirm.
I
At the hearing on this appeal, Ms. Snavely argued that the King County Superior Court of Washington’s oral ruling that the Trust was a spendthrift trust was binding on the bankruptcy court even though the judgment was not entered until after Mr. Miller’s automatic stay from his bankruptcy case was in place. Ms. Snavely argued that as a spendthrift trust, the Trust was not property of Mr. Miller’s estate, and pursuant to 11 U.S.C. § 541(c) therefore was not subject to the automatic stay from Mr. Miller’s bankruptcy filing.
Ms. Snavely raised this argument for the first time during oral argument. Ordinarily, we will not consider an argument raised so late. See Fed. R.App. P. 28(9)(A) and (B) (appellant’s brief must contain “appellant’s contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies; and for each issue, a concise statement of the applicable standard of review”); Independent Towers of Washington v. Washington, 350 F.3d 925, 929 (9th Cir.2003) (Court of Appeals will not consider an appellant’s claims that were not argued specifically and distinctly in a party’s opening brief). However, we did consider, and reject, this argument in our published opinion in a related case between the same parties. See Snavely v. Miller, No. 03-35894 (9th Cir. Feb. 2, 2005). Accordingly, we reject this argument here as well.
II
Ms. Snavely contends that the Trust’s proof of claim is not a core pro *498 ceeding because the Trust is not Mr. Miller’s creditor and she filed the proof of claim involuntarily. She also contends that Mr. Miller’s counterclaims are not core proceedings. We disagree.
28 U.S.C. § 157(b)(2)(B) expressly includes “the allowance or disallowance of claims against the estate” as core proceedings. Ms. Snavely filed a proof of claim on behalf of the Trust for $603,906.12 for administrative expenses she contends Mr. Miller owed the Trust. “The filing of a proof of claim is the prototypical situation involving the ‘allowance or disallowance of claims against the estate,’ a core proceeding under 28 U.S.C. § 157(b)(2).” In re G.I. Industries, 204 F.3d 1276, 1279-80 (9th Cir.2000) (citations omitted).
Ms. Snavely was not forced to file the proof of claim nor was the filing involuntary. Mr. Miller listed Ms. Snavely as an unsecured creditor on his bankruptcy schedules. The district court ordered Ms. Snavely to file a proof of claim “asserting all the sum to which she asserts the Trust is entitled as expenses of administration” from Mr. Miller’s share of the Trust. If there were no sums for which she asserted Mr. Miller was indebted, Ms. Snavely could have elected not to file the proof of claim on the basis that the Trust had no sums to claim.
The Trust was a creditor of Mr. Miller. The attachments Ms. Snavely filed in support of the Trust state that the Trust expended $1,803,318.35, including interest, based on various loans and expenses paid by Ms. Snavely as trustee. The attachment asserts that Mr. Miller owes the Trust one-third of that amount, or $603,906.12. See 11 U.S.C. § 101(10)(A) (a creditor is an entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor); § 11 U.S.C. 101(5)(A) (a claim is a right to payment, whether or not such right is reduced to judgment). During oral argument, Ms. Snavely’s counsel conceded that the Trust is a creditor of Mr. Miller if 11 U.S.C. § 541(c) does not apply.
III
28 U.S.C. § 157(b)(2)(C) expressly includes “counterclaims by the estate against persons filing claims against the estate” as core proceedings. Mr. Miller’s claims are core proceedings because they are “counterclaims” under 28 U.S.C. § 157(b)(2)(C). Athough Mr. Miller’s easement claim was tried before Ms. Snavely filed the Trust’s proof of claim, the bankruptcy court did not issue an order or judgment on this claim until November 27, 2001, after the Trust’s proof of claim was filed. Further, 28 U.S.C. § 157(b)(2)(0) expressly includes as core proceedings “other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death actions.”
IV
Ms. Snavely contends that the bankruptcy court lacked subject matter jurisdiction over the Trust’s proof of claim under the “probate exception.” In Markham v. Allen, 326 U.S. 490, 494, 66 S.Ct. 296, 90 L.Ed. 256 (1946), the Supreme Court held that the probate limitation prohibits a federal court only from probating a will or administering an estate. Id. Federal courts have jurisdiction to entertain suits concerning probate property as long as they do not interfere with state probate proceedings. Id; see also Marshall v. Marshall, 392 F.3d 1118 (9th Cir.2004) (quoting Markham, 326 U.S. at 494, 66 S.Ct. 296). The bankruptcy court “[did] not interfere with the probate proceedings or assume general jurisdiction of the probate or control of the property in the *499 custody of the state court.” Markham, 326 U.S. at 494, 66 S.Ct. 296. Accordingly, the bankruptcy court had subject matter jurisdiction over the claim.
V
Ms. Snavely contends that the bankruptcy court erred in failing to consider the fact that many of Mr. Miller’s counterclaims are barred by res judicata, collateral estoppel, and accord and satisfaction. She argues that Mr. Miller’s claims were litigated and resolved in Ms. Snavely’s January 2, 1997 confirmed plan of reorganization, the 1994 settlement agreement in the Margueritte Miller bankruptcy between Margueritte Miller and Mr. Miller, and the dismissal of claims Mr. Miller filed in Ms. Snavely’s bankruptcy in 1998.
In prior appeals to this court in Snavely v. Miller, No. 02-35290, 81 Fed.Appx. 89, 2003 WL 22455457 (9th Cir. Oct. 29, 2003) (Mem.) (amended on Apr. 29, 2004) and Snavely v. Miller, No. 02-35313, 81 Fed.Appx. 89, 2003 WL 22455457 (9th Cir. Oct. 29, 2003) (Mem.) (amended on Apr. 29, 2004), Ms. Snavely argued that Mr. Miller’s claim for a determination of easement rights regarding tracts CC and DD of his property was barred by the doctrine of res judicata because the United States Bankruptcy Court in the Western District of Washington had dismissed Mr. Miller’s claims, including his easement claim in Ms. Snavely’s bankruptcy case. She further argued that the easement claim was extinguished by the 1994 settlement agreement and was therefore barred by accord and satisfaction.
This court expressly rejected application of res judicata and accord and satisfaction to Mr. Miller’s claim for a determination of easement rights regarding tracts CC and DD on October 29, 2003. Snavely v. Miller, No. 02-35290, 81 Fed.Appx. 89, 2003 WL 22455453 (9th Cir. Oct. 29, 2003 at 2-3) (Mem.) (amended on Apr. 29, 2004); Snavely v. Miller, No. 02-35313, 81 Fed.Appx. 89, 2003 WL 22455453 at 3 (9th Cir. Oct. 29, 2003) (Mem.) {amended on Apr. 29, 2004). We will not reexamine issues previously raised and decided by another panel of this Court. See Old Person v. Brown, 312 F.3d 1036, 1039 (9th Cir.2002) (under the law of the case doctrine, a court is precluded from reexamining an issue previously decided by the same court in the same case). None of the reasons for deviating from the law of the case applies here. See Gaudin v. Remis, 379 F.3d 631, 636 (9th Cir.2004) (reasons for deviating from the law of the case are (1) that the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial).
We agree with the bankruptcy court that res judicata and collateral estoppel do not apply to Mr. Miller’s remaining claims. Ms. Snavely’s tortious conduct occurred over an extended period of time, both before and after the prior judicial determinations upon which she relies. Ms. Snavely denied Mr. Miller access to any easements for his property beginning in 1997 and made attempts to thwart the sale of Mr. Miller’s property to Dr. Glenn Jarrett beginning in 1999. Ms. Snavely’s tortious efforts followed a January 19, 1996 order by the bankruptcy court directing her to grant access and an easement to Mr. Miller. Ms. Snavely failed to do so after 1997.
Mr. Miller testified that he suffered emotional distress which post-dated 1997. Finally, the bankruptcy court found that Mr. Miller incurred monetary damages from January 2000 until September 1, 2001. The bankruptcy court did not err in concluding that Mr. Miller’s claims were *500 not barred by res judicata and collateral estoppel.
VI
Ms. Snavely contends the bankruptcy court erred in concluding that the Trust required an annual accounting. Both the Trust instrument and Washington trust law require an annual accounting. See Polsen v. Nelson, 21 Wash.App. 489, 585 P.2d 840, 843 (Wash.Ct.App.1978) (holding that under Wash. Rev.Code § 30.30.020, the predecessor statute to § 11.106.020, “[t]he trustee or trustees must provide an accounting at least annually”). The bankruptcy court did not err in so concluding.
VII
Ms. Snavely contends that the bankruptcy court erred in concluding that Mr. Miller was not liable for debts incurred by the Trust before its creation. Her reliance on Wash. Rev.Code § 11.18.200(1) is misplaced. Ms. Snavely incurred the expenses for the care of her mother from mid-1991 through August 1995. Mr. Miller was not a “beneficiary of a nonprobate asset” from mid-1991 to 1993 within the meaning of Wash. Rev.Code § 11.18.200(1) because none existed at that time.
VIII
Ms. Snavely contends that the bankruptcy court’s finding that rental income from the guest house was Trust income as opposed to a loan from Ms. Snavely to the trust is clearly erroneous. CPA James Galipeau testified that Ms. Snavely’s bank accounts contained no reference to loans to the Trust. The bankruptcy court found Mr. Galipeau’s testimony credible. The bankruptcy court’s finding that the rental income from the guest house was a Trust asset is supported by the record and is not clearly erroneous.
IX
Ms. Snavely also contends that the bankruptcy court clearly erred in finding that the probate fees she requested as part of the Trust’s proof of claim were duplicative of the services provided by her chapter 11 counsel and that the probate fees she had already paid the probate attorneys were sufficient. The bankruptcy court’s findings were based on John Sherwood, Sr.’s testimony that Ms. Snavely’s fees for her administration of the estate were unreasonable and improper. The bankruptcy court found Mr. Sherwood’s testimony, which was not contested by probate counsel, to be credible. The bankruptcy court’s findings were not clearly erroneous.
X
Ms. Snavely further contends that the bankruptcy court’s finding that the promissory notes for her alleged loans to the Trust “appear to have been prepared at the same time” is clearly erroneous. The bankruptcy court reviewed trial exhibits of the 42 promissory notes Ms. Snavely submitted to substantiate loans she allegedly made to the Trust. The bankruptcy court found Ms. Snavely’s accounting to be inaccurate and that the exhibits were prepared after the fact. The bankruptcy court’s finding is supported by the record and is not clearly erroneous.
XI
Ms. Snavely maintains that the bankruptcy court erred in finding that she engaged in self-dealing and in concluding that she breached her fiduciary duties as Trustee of the Trust. Trust and probate expert John F. Sherwood testified that Ms. Snavely’s personal representative fees charged to the Trust were unreasonable *501 and that her failure to comply with the Trust’s requirements was a breach of her fiduciary duties. The bankruptcy court found this testimony to be credible. It did not err in concluding Ms. Snavely breached her fiduciary duties as Trustee of the Trust.
XII
Ms. Snavely asserts that the bankruptcy court did not have jurisdiction over Mr. Miller’s tortious interference with business interests claim because the claim constituted a “personal injury tort” under 28 U.S.C. § 157(b)(5) which the district court, not the bankruptcy court, must adjudicate. Under Montana law, Mr. Miller’s claim for tortious interference is not a personal injury tort. The elements of this claim are that the defendant engaged in acts that (1) are intentional and willful; (2) are calculated to cause damage to the plaintiffs business; (3) are done with the unlawful purpose of causing damage or loss, without right or justifiable cause on the part of the actor; and (4) result in actual damages or loss. Maloney v. Home and Investment Center, Inc., 298 Mont. 213, 994 P.2d 1124, 1132 (2000). The focus is on business loss, not personal injury. The bankruptcy court found that Ms. Snavely acted intentionally and that her actions wrongfully interfered with Mr. Miller’s legal right to access and enjoyment of his property. The record supports these findings.
XIII
Ms. Snavely also asserts that the bankruptcy court’s determination that she tortiously interfered with Mr. Miller’s business interests is erroneous because none of her acts were wrongful and tortious and Mr. Miller suffered no damage. The bankruptcy court considered all of the evidence, including the testimony of Ms. Snavely concerning her placement of a gate across the only access to Mr. Miller’s property, the testimony of Dr. Glenn Jarrett that he had trouble accessing Mr. Miller’s property when he considered buying it, and evidence that Ms. Snavely granted an easement over Mr. Miller’s property to a third party without Mr. Miller’s consent.
The bankruptcy court found that Mr. Miller presented undisputed credible testimony of a financial resources management expert that based on Dr. Jarrett’s offer of $695,000, with a 10.5% capitalization rate, Mr. Miller would have earned $72,975 per year. The expert calculated that from January 2000 to September 1, 2001, the loss to Mr. Miller was $127,706. The bankruptcy court did not err in concluding that Ms. Snavely tortiously interfered with Mr. Miller’s business interests or in awarding Mr. Miller damages based on Ms. Snavely’s tortious conduct. See Bolz v. Myers, 200 Mont. 286, 651 P.2d 606, 613 (1982) (“loss of profits on a reasonable basis for computation and the best evidence available under the circumstances will support” the determination of damages by the court). The court’s calculation was based on undisputed and credible evidence.
XIV
Ms. Snavely further asserts that the bankruptcy court erred in awarding Mr. Miller $75,000 based on a claim for intentional infliction of emotional distress because Mr. Miller did not assert this claim in his complaint and it was not set forth in the pretrial order. The bankruptcy court did not award damages based on a claim for intentional infliction of emotional distress. In analyzing Mr. Miller’s claim for tortious interference with business interests, the bankruptcy court stat *502 ed: “Miller’s claims for relief include the tort of intentional infliction of emotional distress through tortious interference with business relations.” Under Montana law, emotional distress damages may be awarded for a violation of the tort of intentional interference with business interests. Maloney, 994 P.2d at 1137.
XV
Ms. Snavely argues that the bankruptcy court erred in awarding Mr. Miller $72,000 as punitive damages because it failed to make findings of fact concerning eight of the nine factors necessary for an award of punitive damages under Mont. Code Ann. § 27 — 1 — 221(7)(b). In its order, the bankruptcy court made adequate factual findings on the factors required by Mont.Code Ann. § 27-1-221(7)(b). The bankruptcy court made specific findings on the actual damages Mr. Miller suffered and on Ms. Snavely’s worth, which it found to be $3,685,521. The record supports the bankruptcy court’s findings that Mr. Miller is entitled to an award of punitive damages under the relevant factors of § 27-1-221(7)(B) and that Ms. Snavely acted with actual malice. See Mont.Code Ann. § 27-1-221(1); Rasmussen v. Fowler, 245 Mont. 308, 800 P.2d 1053, 1056-57 (1990) (court concluded that actual malice for purposes of an award of punitive damages is present where a party blocks access to property after being told that access was to remain open).
XVI
Ms. Snavely alleges that the bankruptcy court erred in awarding Mr. Miller attorney’s fees because she was not required to grant Mr. Miller a utility easement and because her reason for locking the gate on Amigo Drive was to prevent vandalism. The bankruptcy court considered all of the evidence, including the testimony of Dr. Jarrett, who testified concerning the trouble he had in accessing the property when he was considering buying it. The bankruptcy court’s award of attorney’s fees was clearly within the bankruptcy court’s discretion.
AFFIRMED.

 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3.